# PACIFIC MUTUAL LIFE INSURANCE COMPANY
## v. BRANHAM.

[No. 4,526.   Filed February 17, 1904.   Rehearing denied April 27, 1904.   Transfer denied December 8, 1904.]

1.  PLEADING.—*Complaint.—Accident   Insurance.—Disability.—Proximate Result of Injury.*—Where, in an action by the assured against the insurer on an accident policy for indemnity for loss by accident, the complaint alleges that plaintiff after receiving the injuries "was immediately and continuously disabled and crippled and wholly incapacitated for all business, labor or calling, and so remained * *, * fifteen months," such complaint clearly shows that such disability resulted proximately from such injury.   p. 245.

2. INSURANCE. — *Accident.* — *"Continuous"* *Disability.* — *Evidence.*—
Where the evidence in an action for loss on an accident policy shows:
that plaintiff fell and injured his knee March 8; that he treated it
for five or six days; that he then called defendant's local examiner
who treated it for about a week, when plaintiff had to go to bed;
that he remained there four weeks; that then he went to his office
and performed a part of his duties; on May 20 he went to another
city to be treated by a specialist and remained there until August 6;
came back on crutches with his knee in plaster of Paris, remaining a
month—and took treatment until November; returned, was operated
on and remained in hospital until December 15; returned home; was
obliged to return to specialist for another operation, and spent four
weeks in hospital; returned home in plaster of Paris, and continued
treatment until May 20, a period of about fifteen months, such evi-
dence fully justifies a verdict that plaintiff's disability was "con-
tinuous." p. 246.

3. SAME.—*Accident.*—*"Total Disability."*—Where the assured under
an accident policy is injured, and such injury prevents him from do-
ing substantially all of the necessary and material things in his oc-
cupation requiring his own exertions, in substantially his customary
and usual manner, such injury constitutes a "total disability" within
the meaning of such policy. p. 247.

4. SAME.—*Accident.*—*"Immediate Notice of Accident."*—Where an
accident policy provides that all claims thereon shall be forfeited un-
less "immediate notice of any accident" is given, and the assured was
injured on March 8, and sent notice on March 30, such notice was in
a reasonable time, especially in view of the fact that the assured did
not think his injury was serious at first. p. 249.

5. SAME.—*Proofs of Accident.*—*Waiver.*—Where the assured, under
an accident policy providing that in case of injury immediate notice
be given the insurer or all claim for loss should be forfeited, received
the injury March 8, and sent notice March 30, and the insurer re-
turned blank proofs with instructions for filling them out, and say-
ing that when assured was ready to return to duty such claim would
be adjusted, such insurer thereby waived any defense on the ground
of time in giving the notice. p. 250.

6. NEW TRIAL.—*Recovery Too Large.*—Where the assured under an
accident policy, under the advice of his physician that he would
likely be well soon, executed proofs for payment up to a certain date,
a verdict giving indemnity for disability for a much longer period is
proper where it is shown that such disability actually continued for
such longer time, making proofs up to a certain time in no sense
concluding assured from making further claim for continuing dis-
ability. p. 251.

7. TRIAL.—*Instruction.*—*"Immediate."*—*Equivocal Interpretations.*—
Where, in an action for indemnity for loss under an accident policy,
the meaning of the word "immediate" becomes material—whether ap-

plied to time or causation—an instruction giving it such meaning as will allow greater indemnity and sustain the claim, is properly given.   p. 251.

From Superior Court of Vanderburgh County; *John H. Foster,* Judge.

Action by Hal. H. Branham against the Pacific Mutual Life Insurance Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. E. Williamson,* for appellant.
*Charles L. Wedding,* for appellee.

Comstock, J.—Appellee, who was plaintiff below, recovered judgment against appellant upon an accident policy issued to him by appellant. The policy is made a part of the complaint. The defendant answered in three paragraphs: First, a general denial. Second, that the plaintiff's disability was not immediately consequent upon the happening of the accident, which was March 8, and the disability did not occur until March 24, and that between those dates appellee was not continuously and totally disabled, in consequence of the injury, to perform the character of labor mentioned in the policy. The third alleged that the plaintiff failed to give notice of the accident according to the terms of the policy. The case was tried by a jury, and a verdict returned for appellee in the sum of $922—$75 of this sum was remitted. Appellant's motion for a new trial was overruled, and judgment rendered.

The errors assigned are (1) that the court erred in overruling appellant's demurrer for want of facts to the amended complaint; (2) in overruling appellant's motion for a new trial.

1.   It is urged that the complaint is bad because it fails to aver that the disability resulted proximately from the injury. The complaint, after alleging the receipt of the injury, avers that appellee "was immediately and continuously disabled and crippled and wholly incapacitated for all

business, labor or calling, and so remained wholly incapacitated, disabled and prevented from performing any work or labor, or pursuing any calling, for the space of fifteen months," etc. The objection is not well taken.

Appellant next argues, in the order stated, that appellee's disability was not continuous. Second that his loss of time was not total.

2. The provisions of the policy involved are (omitting the formal parts): "Against the effects of bodily injuries sustained within the terms of this policy, caused solely by external, violent and accidental means, the company will pay an indemnity of $25 per week, not exceeding fifty-two consecutive weeks, for the immediate, continuous and total loss of such business time as may necessarily result from such injuries alone." The evidence shows that in March, 1900, appellee was twenty-nine years old, and in good health, and was paymaster and chief clerk to the treasurer and purchasing agent of the Peoria, Decatur & Evansville Railroad Company. At that time he held an accident policy in the appellant company, promising the payment to him of $25 per week for the immediate, continuous and total loss of such business time as might necessarily result from such injury alone. On the night of March 8, while bowling in a tenpin alley, he slipped, fell and wrenched his knee, which he thought unimportant at the time. Next morning his knee was swollen. It was bathed and bandaged, and this treatment was kept up for five or six days, with no improvement. At the end of five or six days, or on the 13th or 14th of March, he consulted Dr. G. M. Young, the examiner for the appellant company, who continued the same general treatment, but without benefit, and at the end of a week, or about the 20th or 21st of March, he had to go to bed and be operated on. He remained in bed under treatment for four weeks, then, under the advice of the physician, he went to his office, exercising proper care, and performing such portion of his labor as he could, until the 20th

of May, when he went to Indianapolis to consult a specialist and returned to Indianapolis on the 26th, where he remained until the 6th of August, when he was obliged to return home to Evansville because of the sale of his railroad. He returned home on crutches with his knee in plaster of Paris, and remained in that condition for a month. Under the direction of his surgeon he removed the plaster, and took massage treatment until November, when he again returned to Indianapolis and was operated on. He remained in the hospital until December 15, when he returned to Evansville, and was able to get around with crutches and cane until the middle of February, when he was obliged again to return for treatment to Indianapolis, where he was again operated on, and again spent three or four weeks in the hospital, returning to Evansville about the middle of March with his knee in plaster of Paris, and remained in that condition until the 20th of April. About that time he took treatment from Dr. Young, who operated on him April 21, and continued treating him until May 20, 1901, and this was his condition from about the middle of March, 1900, extending over a period of fifteen months continuously. From the evidence the jury was justified in concluding that appellee's disability was continuous.

3. Applying the rule laid down by the court in *Commercial Travelers, etc., Assn.* v. *Springsteen* (1899), 23 Ind. App. 657, 671, his disability was total. In that case the court approved the following instruction given by the court below: "This paragraph sets out as an exhibit a copy of the policy, and in said policy it is provided that no claim shall ever accrue unless it arises from physical bodily injury through external, violent and accidental means, and then only when the injury shall, independently of all other causes, immediately and wholly disable the insured from performing any and every kind of business pertaining to his occupation as manager of the When Clothing Company. I instruct you that as a matter of law the meaning of

this provision of the policy is not that the plaintiff must have been disabled so as to prevent him from doing anything whatsoever pertaining to his said occupation, but that he must have been disabled only to the extent that he could not do any and every kind of business pertaining to his occupation. He might be able to do a part and not be able to do all, and because he was not able to do all be deemed to be wholly disabled from doing any and every kind, provided, of course, that he was so disabled as to be prevented from doing substantially all the necessary and material things in said occupation requiring his own exertions in substantially his customary and usual manner of so doing. He might be able to do personally minor and trivial things, not requiring much time or physical labor, and through others, acting under his direction, to do the heavier things requiring physical exertion, which in the ordinary and proper performance of his duties he had heretofore done personally, and yet, because of inability to do these heavier things and more material things personally, be said to be wholly disabled within the terms of his policy; provided, further, that the things he was unable personally to do constitute substantially all of his said occupation." In the opinion many cases are collected. We do not deem it necessary to recite them.

We quote from Joyce, Insurance, §3031, in speaking of indemnity clauses of accident insurance contracts, as follows: "The general purpose of such clauses is to furnish an indemnity to assured for the loss of time by reason of accident or injury which prevents him from prosecuting his business, and it would seem that this ought to refer to his inability to perform substantially the duties which are necessary to be done in the business to which the contract refers, and absolute physical inability ought not to be meant in all cases, for the injury might be of such a character as that common care and prudence would preclude the

prosecution of said business." From Kerr, Insurance, p. 386, we quote the following: "Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total disability exists although the insured is able to perform a few occasional acts, if he is unable to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all substantial and material acts necessary to be done in the prosecution of his business, or that his injuries were of such a character and degree that common care and prudence required him to desist from his labors so long as was reasonably necessary to effect a speedy cure." From May, Insurance (4th ed.), §522, the following is quoted: "Total disability from the prosecution of one's usual employment means inability to follow his usual occupation, business, or pursuits in the usual way. Though he may do certain parts of his accustomed work, and engage in some of his usual employments, he may yet recover, so long as he can not to some extent do all parts, and engage in all such employments."

4. The policy contains the following provision: "Unless the claimant gives the company at San Francisco, California, immediate notice of any accident, with full particulars, and name and address of insured, and furnish affirmative proof, * * * all claims based thereon and hereon shall be forfeited." It is insisted that it was necessary for appellee to prove that notice was given as required by the policy. Appellee was injured March 8, 1900, and notice was given March 30, 1900. Appellant contends that the notice was insufficient because not immediate. It has been held in this State that "immediate" means within a reasonable time under the circumstances. *Insurance Co.* v. *Brim* (1887), 111 Ind. 281.

In *Martin* v. *Pifer* (1884), 96 Ind. 245, 248, the court say: "The construction, as given generally by courts to the

words 'immediately' and 'forthwith,' when they occur in contracts or in statutes, is, that the act referred to should be performed within such convenient time as is reasonably requisite. In *Pybus* v. *Mitford* [1673], 2 Lev. 75, decided more than two centuries ago, it was said: 'The word immediately, although in strictness it excludes all meantimes, yet to make good the deeds and intents of parties, it shall be construed such convenient time as is reasonably requisite for doing the thing.' This construction has prevailed since in most cases which have come to our attention. *In re Blues* [1855], 5 El. & Bl. 291; *Snowball* v. *Dixon* [1841], 4 Y. & C. 511; *Thompson* v. *Gibson* [1841], 8 M. & W. 281; *Richardson* v. *End* [1877], 43 Wis. 316; *New York Cent. Ins. Co.* v. *National Protection Ins. Co.* [1854], 20 Barb. 468; *Rokes* v. *Amazon Ins. Co.* [1879], 51 Md. 512, 34 Am. Rep. 323; *Railway, etc., Assur. Co.* v. *Burwell* [1873], 44 Ind. 460." See, also, *Peele* v. *Provident Fund Soc.* (1896), 147 Ind. 543; *Provident Life, etc., Co.* v. *Baum* (1867), 29 Ind. 236; 1 Am. and Eng. Ency. Law (2d ed.), p. 323; *Employers, etc., Corp.* v. *Light, etc., Co.* (1901), 28 Ind. App. 437.

In *Pickel* v. *Phenix Ins. Co.* (1889), 119 Ind. 291, a suit upon a fire insurance policy in which the policy contained the provision that in case of loss the insured should forthwith give notice thereof to the company, after citing, on page 300, *Railway, etc., Assur. Co.* v. *Burwell, supra,* and other cases, held that a delay of fifty days, unexplained, was unreasonable delay.

5. Appellee delayed giving notice because he did not deem the injury serious. The evidence, however, shows that upon receipt of notice of appellee's injury appellant sent blanks to him upon which to furnish proofs of accidental injury and loss of time from work, giving particular instructions to the appellee as to the proof, concluding: "When this is done, and you are ready to resume your duties, send all papers to this office, and claim will be ad-

justed without unnecessary delay." This was a waiver of time in giving notice. The proof was warranted under the averment of the complaint that appellant denied all liability to plaintiff upon said policy. *Towle* v. *Ionia, etc., Ins. Co.* (1892), 91 Mich. 219, 227, 51 N. W. 987; Kerr, Insurance, §191; *Hohn* v. *Interstate Casualty Co.* (1879), 115 Mich. 79, 72 N. W. 1105.

6. Another reason for a new trial is that the amount of recovery—$847—is too large. It is insisted that under no view of the case is appellee entitled to more than $378.55, being $25 per week for the time intervening between the 24th of March and the 6th of August, nineteen weeks, being the time which he claims he lost as set out in the original proofs which appellee testified he sent in but subsequently withdrew. Under the advice of his physician that he would likely be well soon, appellee made proofs for payment to August 6. This would not preclude his making further claim for an amount justly due him for continuing disability. *Hohn* v. *Interstate Casualty Co., supra.*

7. In instructions numbered two, three, four and five, requested by appellant and refused, is presented its construction of the policy, viz., that "immediate," as used with relation to other words and terms of the policy, applied to time and not to causation. *Shera* v. *Ocean Accident, etc., Corp.* (1900), 32 Ont. 411, holds against appellant's claim. At most, it can only be said for the claim of appellant, that the language employed is equally susceptible of two interpretations, in which event the one giving greater indemnity and sustaining the claim will be adopted. May, Insurance (4th ed.), §§174, 175; *Union, etc., Ins. Co.* v. *Woods* (1894), 11 Ind. App. 335; *Union, etc., Ins. Co.* v. *Jones* (1897), 17 Ind. App. 592.

Instructions two and two and one-half given were excepted to. It is claimed that they are misleading and contradictory; that instruction two does not require the jury to find a continuous total loss of business time, while two

and one-half does.   Instruction two concludes as follows:
"But while there must be an immediate loss of business
time, and a continuing loss of business time, and a total loss
of business time, there need not be a total loss of business
time which must begin at the time the bodily injuries were
first sustained, and continue total for the period of time
for which the indemnity is sought." Instruction two and
one-half is as follows:   "The loss of business must be im-
mediately consequent upon the injuries sustained, and
must be thereafter continuous during any period of time
for which the plaintiff may recover.  If the plaintiff suf-
fered a loss of business time, and afterwards his injuries, if
any, improved so that he suffered no loss of business time,
he can not recover for any period thereafter, although he
may subsequently suffer a total loss of time by reason of
his injuries.   The loss of business time must be continuous.
If, for example, on the 17th day of April his injuries, if
any, became so much improved that he suffered no loss of
business time therefrom, he could not recover for any pe-
riod thereafter." Two and one-half differs from two in
making clear the fact that after the loss of business time
once ceases there can be no recovery after that time, al-
though there may be a recurrence of the loss of time.   We
can not concede that these instructions are contradictory or
misleading.

The instructions given, considered as a whole, are not in-
consistent, and are in harmony with the instruction ap-
proved in *Commercial Travelers, etc., Assn.* v. *Springsteen*
(1899), 29 Ind. App. 657.   In his able brief counsel for
appellant cites authorities in support of the instructions re-
fused, and of the proposition that the word "immediate"
applies to time and not causation.   We concede that the de-
cisions are not in harmony upon the meaning of either
"total disability" or the word "immediate."

The judgment is clearly right upon the evidence, and
is affirmed.