**TRAVELERS INSURANCE CO. v. BLAKE.**

No. 26149. Feb. 4, 1936.

Rehearing Denied March 24, 1936.

Randolph, Haver, Shirk & Bridges, for plaintiff in error.

Melton & Melton, for defendant in error.

PER CURIAM. This is a suit to recover upon an accident insurance policy.

The record discloses substantially the following facts: Plaintiff, a traveling salesman. engaged in selling shoes, carried a policy of insurance with the defendant, providing indemnity for bodily injuries effected through accidental means. While in the performance of his duties. on Saturday, February 18, 1931, a sample shoe case with a metal corner fell from the top of another case. hitting the outside ankle of his right leg and left a small red mark which gave him some pain, but plaintiff continued with his work although it was uncomfortable; the following Monday, he resumed his duties on the road, although his ankle was sore and painful; it was his busy time of year and he had a young man with him as an assistant and he let him do the driving, lifting, loading, and unloading, packing. and unpacking; during the latter part of the week, he observed a little blue spot with a sort of pimple on the end of it, and put some mercurochrome on it. Upon returning to his home at Chickasha, he called upon Doctor Nunnery, either Saturday or Monday. The pain increased and his ankle got worse, and the use of his leg decreased very materially; he did less of his work all the time and it got to where he did not even handle his grips; he usually kept his assistant through January, February. and March, but that year he had to keep him on after that time as there was so much pain in lifting the cases and doing the work that he was not able to do it; between February and September, he was out on his regular territory displaying his goods and getting around and meeting his customers, with the aid of his helper, although he suffered pain, and discomfort and labored under a great handicap. On September 15th he had to give up his employment entirely. Plaintiff was at Mayos, Rochester, Minn.. for eleven weeks and underwent several operations for an infected tendon; was treated at Marlin, Houston, and Quanah. Tex., and at Chickasha, Okla. He was advised by his physician to stay off his foot; they explained to him the danger resulting from his injury, but they could not make him believe he could not work and get it healed; he did not realize the seriousness of it.

The insurance policy contained the following provisions:

"Partial loss of time.

"Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured **from date of accident** from performing one or more important duties pertaining to his occupation, or for like continuous disability following total loss of time, the company will pay during the period of such disability, but not exceeding twenty-six consecutive weeks, a weekly indemnity of one-half of the amount payable for the total disability."

"Total loss of time.

"Or. if such injuries, **independently and exclusively of all other causes,** shall wholly and continuously disable the insured **from date of accident** from performing any and every kind of duty pertaining to his occupation, the Company will pay weekly indemnity at the rate hereinbefore specified for the period of such continuous total disability, but not exceeding fifty-two (52) consecutive weeks. After the payment of weekly indemnity for fifty-two (52) weeks as aforesaid the Company will continue weekly payments of the same amount thereafter so long as the Insured shall be wholly and continuously disabled by such bodily injuries from engaging in any occupation or employment for wage or profit."

"Additional Provisions.

"(a) The insurance under this policy shall not cover accident, disability, death or other loss caused directly or indirectly, wholly or partly, by bodily or mental infirmity, bacterial infections (except pyogenic infections which shall occur with and through an accidental cut or wound) or by any other kind of disease."

Plaintiff submitted a sworn claim to the insurance company stating that he was partially disabled from April 3, 1933, to September 15, 1933, and totally disabled from September 15, 1933, to present time. In the original petition, the same allegations were made as to partial and total disability as are contained in the proof of claim. An amended petition was filed in which it was alleged:

"That if the plaintiff was not wholly and continuously disabled from performing any and every kind of duty pertaining to his occupation from the date of such accident and injury, within the meaning of the terms and provisions of said policy, plaintiff was, by reason of such injury, wholly and continuously disabled from the date of such accident from performing one or more important daily duties pertaining to his occupation, and is entitled to receive from the defendant company the weekly indemnities provided for in such cases, and is entitled to recover from said defendant company herein such weekly indemnities."

A trial was had before a jury, and at the conclusion of plaintiff's evidence the defend-

ant interposed a demurrer, and upon the demurrer being overruled, it rested. The trial resulted in a verdict in favor of the plaintiff, upon which the court rendered judgment, and the defendant prosecutes this appeal to reverse that judgment.

Defendant presents several questions, but they can all be considered under two propositions:

(1) There was neither partial nor total disability "from the date of the accident."

(2) Error in the instructions to the jury.

Considering the first proposition, the question arises as to what is meant by the words "total disability from the date of the accident."

The term "total disability" under the provisions of an accident policy has been defined by this court in at least three cases: Continental Casualty Co. v. Wynne, 36 Okla. 325, 129 P. 16; Ozark Mutual Life Association v. Winchester, 116 Okla. 116, 243 P. 735, and Metropolitan Life Ins. Co. v. Richter, 173 Okla. 489, 49 P. (2d) 94, as follows:

" 'Total disability' under the provisions of an accident insurance policy does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists though the insured may be able to perform a few occasional or trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation."

When common prudence and the exercise of ordinary care would require one injured to desist from performing his duties, it may generally be said that such injured party is totally disabled within the meaning of an accident insurance policy providing indemnity "if such injuries * * * shall wholly and continuously disable the insured from date of accident from performing any and every kind of duty pertaining to his occupation."

It is impossible to lay down an iron-clad rule by which it can always be accurately determined, from a given state of facts, whether an injured person has been totally disabled from the date of an accident, within the meaning of such a provision as is contained in this contract.

The plaintiff was injured, and total disability has resulted.

In U. S. Fidelity & Guaranty Co. v. McCarthy, 50 Fed. (2d) 2, the court said:

"Such accident policy provisions have been before the courts time out of mind. It has always been obvious that an absurdly literal construction could be put upon such words as 'any and every duty pertaining to my occupation' which would reduce the coverage for total disability to the states of coma or absolute mental and physical helplessness. But the fact that money is paid and accepted for accident insurance under these policies compels attributing good faith to the parties and a construction of the words used in the policy conformable to an honest intention to indemnify against total inability to practically carry on the occupation specified."

In Kemper v. Police & Firemen's Ins. Association (Tex. Com. App.) 44 S. W. (2d) 978, the policy of insurance provided that the benefits "for loss of life shall be payable only in the event that the disability resulting from said injury shall be total and immediate, and shall be continuous from the time of the injury to the time of the death of said member." The insured was a captain in the city fire department, and while in the performance of his duty was injured by breathing gas and fumes, and as a result thereof contracted pneumonia, which caused his death within 20 days after his injury, and for 12 or 13 days immediately following the injury the insured continued to perform his duties as a fireman and did not go to the hospital until about a week before his death, although during that time he was a very sick man and was forcing himself to perform his duties which he was too sick to perform. Reversing the judgment of the Civil Court of Appeals (28 S. W. (2d) 1111), the court said:

"We think that the requirements of this policy to the effect that the disability shall be immediate, and total from injury to death, should be given effect, but in our opinion a person who dies from accidental injury does not have to be flat on his back, unable to move or think, from the time of injury to the time of death in order to qualify as totally disabled between such times, within the meaning of this policy. Neither is it necessary for him to be carried from the scene of the injury on a stretcher or in an ambulance to his deathbed, in order for his beneficiary to recover on the contract. It is enough if he is in such a physical condition produced by the injury as common care and prudence would have required the insured to consider himself totally incapacitated to discharge his duties as a fireman, and the mere fact that a strong will and great courage might cause the insured to do that which he was unable to do without great physical pain and effort would not, as a matter of law, show that he was not totally disabled. * * * We think further that it is impossible to lay down an ironbound rule by which it can always be accurately determined, from a given state of facts, whether a person has been totally disabled from the time of in-

jury until the time of death within the meaning of this contract. We do hold, however, that as a general rule, it can be said that a person is totally disabled from the time of injury until the time of death when during all such time his condition is such that common prudence, and the exercise of ordinary care, would require him to desist from the performance of his duties."

Practically the same provision as to total disability was contained in the policy considered in the case of American Liability Co. v. Bowman, 65 Ind. App. 109, 114 N. E. 992, wherein it was said:

"The court also found * * * that on November 17, 1912, while working at his usual employment, the ladder on whch appellee was standing slipped and threw him to the floor and injured his right side and hip, and his back in the region of the crest of the ilium, which injury was accompanied by an external visible bruise and discoloration; that he was thereby totally disabled immediately after receiving such injury and continuously for about four days; that immediately after receiving the injury, appellee was removed to his home, and on that day was visited and treated for said injuries in his home by a physician, and at the end of said four days, he was still suffering from his injuries, and returned to his work; that continuously thereafter, except on Sunday, until December 27, 1912, he went to his work 'and attempted to perform his duties under his employment, and did perform a great part of said duties; but that his performance of said duties was with great pain and suffering, and there was a considerable portion of said duties he was unable to perform and required the assistance of another man in performing the services which he, had it not been for said injury, would have been able to perform himself, and did perform himself prior to the receiving of such injury'; that on December 27, 1912, the suffering from said injuries became so severe that he was unable to perform any labor, and from that date continuously to the present time (case was tried in June, 1914) has been wholly and totally disabled from performing manual labor, or pursuing his avocation, or performing any of the duties of his employment, and has been continuously under the care and treatment of a regularly licensed physician. * * * The findings disclose a situation where the injury was more severe and the results more permanent and harmful than they at first appeared to be, and in which the injured party showed unusual desire and put forth an extraordinary effort to labor while still incapacitated by his injuries. He was in no sense a malingerer, and the facts present the question whether by his premature effort to labor while so incapacitated, he is, under the provisions of his policy, deprived of compensation which he would clearly be entitled to receive had he remained away from his employment, and made no effort to labor, as the severity of his injury and the intensity of his suffering clearly warranted him in doing.

"The rule prevails in this and most jurisdictions that provisions in a policy for total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction; that the phrase 'total disability' is a relative term, depending in a measure upon the nature of the employment, the capabilities of the injured person, and likewise the circumstances and peculiar facts of each particular case.

"It is usually a question of fact to be determined by the court or jury trying the case, and was such question in the case at bar. Indiana Life, etc., Co. v. Reed, 54 Ind. App. 450-467, 103 N. E. 77, and cases cited; Workingmen's Mut. Prot. Ass'n v. Roos (Ind. App.) 113 N. E. 760; volume 4, Cooley's Briefs on Ins., pp. 3288-3290; Kerr on Insurance, p. 385.

"Where a party is shown to be in fact totally disabled for the entire period for which compensation is sought, it cannot be held as a matter of law that he was not disabled because during a portion of such time he made a good-faith, though ineffectual, effort to perform the duties of his usual employment.

"Nor could he be held to be totally disabled because he failed or refused to labor, when he had the opportunity so to do, if in fact he was at the time reasonably able to perform such labor. Pacific Mutual Life Ins. Co. v. Branham, 34 Ind. App. 243-246, 70 N. E. 174; Commercial Travelers' Mutual Accident Ass'n v. Springsteen, 23 Ind. App. 657-662, 55 N. E. 973; Indiana Life, etc., Co. v. Reed, supra; Young v. Travelers' Ins. Co., 80 Me. 244-247, 13 Atl. 896; Hohn v. Inter-State Casualty Co., 115 Mich. 79, 72 N. W. 1105; Turner v. Fidelity & Casualty Co., 112 Mich. 425, 70 N. W. 898, 38 L. R. A. 529, 67 Am. St. Rep. 428; Lobdill v. Laboring Men's Mut. Aid Ass'n, 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542.

"In several of the cases above cited, it is stated, in substance, that provisions for total disability similar to those in the policy now under consideration, in all cases of doubt, should be liberally and fairly construed as to give to the insured the indemnity which he contracted to obtain, and at the same time the language employed should be so construed as to serve the purpose of guarding the company against fraud or imposition.

"In the case at bar the finding of the court shows that the conclusion reached was consistent both with the idea of providing the indemnity contemplated by the parties when the contract was entered into and of effectually safeguarding the company against

fraud or imposition of any kind. Such construction gives effect to the whole contract and effectuates the purpose which the minds of the contracting parties met when the policy was issued by the company and accepted and paid for by the insured."

That court reaffirmed its holding in Great Northern Casualty Co. v. McCollough (Ind. App.) 174 N. E. 103.

May on Insurance (4th Ed.) 552, says that "wholly disabled" is equivalent to "quite disabled," and that though the insured "may do certain parts of his accustomed work, and engage in some of his usual employments, he may yet recover, so long as he cannot, to some extent, do all parts, and engage in all such employments."

In Clarke v. Travelers' Ins. Co. (1920) 94 Vt. 383, 111 A. 449, 450. the insured was indemnified against loss if the injury "shall * * * wholly, and continuously disable and and prevent the insured from performing any and every kind of duty pertaining to his occupation." It was there held that "total disability" did not mean absolute physical inability to transact any kind of business pertaining to the insured's occupation, but disability from performing the substantial and material acts connected with such occupation.

Many authorities are cited by counsel for the defendant which seem to support their contention, but the weight of authority follows the rule laid down in the cases cited herein. It cannot be held as a matter of law that the insured was not totally disabled because during a portion of such time he made a good faith effort to perform the duties of his usual employment. The evidence discloses an unusual effort on the part of the insured to perform his labors, although incapacitated from the start, during all of which time common prudence. and the exercise of ordinary care, would have required him to desist from the performance of such duties.

Our discussion of the question of "total disability" and the conclusion reached, renders it unnecessary to consider the proposition of "partial disability," as the latter is absorbed in the former.

It is contended that plaintiff never became disabled until a bodily infirmity contributed to his condition, and that the policy of insurance expressly excludes this coverage. We fail to find any evidence in the record to support this contention.

As to the second proposition, we are of opinion that the questions of partial and total disability under the terms of the policy were submitted to the jury under proper instruction, and we see no reason to disturb the verdict.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Fred E. Suits, H. L. Douglass, and Tom W. Garrett in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Suits and approved by Mr. Douglass and Mr. Garrett, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.