**CONTINENTAL CASUALTY COMPANY, Plaintiff in Error,**

v.

**Joseph F. YORK, M.D., Defendant in Error.**

**No. 40826.**

Supreme Court of Oklahoma.

May 25, 1965.

E. Howell Williams, James Howell Duke, Ardmore, for plaintiff in error.

Reuel W. Little, Madill, for defendant in error.

HODGES, Justice.

The plaintiff, Joseph F. York, a practicing physician, filed an action against the defendant, Continental Casualty Company, alleging that he had been issued a policy of insurance by the defendant providing for a monthly indemnity for injuries received by accidental means. The plaintiff contended that due to an accidental injury he was entitled to monthly indemnity benefits as provided in the policy. The defendant in its answer denied the plaintiff suffered accidental injury which resulted in his disability, and further allege that he has not been confined to his house and therefore is not entitled to accidental benefits under the non-occupational policy. The jury returned a verdict for the plaintiff from which judgment the defendant appeals.

The defendant submits for our consideration two propositions upon which the trial court erred in not sustaining its demurrer to the evidence.

### PROPOSITION I.

"Within the provisions of a non-occupational policy of accident insurance,

a disability which prevents a physician from practicing medicine does not necessarily preclude him from each and every employment."

The basis of contention in this case arises out of that portion of the insurance policy which reads:

"TOTAL DISABILITY. When injury * * * wholly and continuously disable and prevent insured from engaging in each and every occupation or employment, the Company will pay the Monthly Indemnity stated in the Schedule for the period the insured shall live and be so disabled. * * *"

■ At an early date this court in the case of Continental Casualty Co. v. Wynne, 36 Okl. 325, 129 P. 16, adopted a liberal interpretation of "total disability" wherein we said "[t]otal disability * * * does not mean absolute physical disability on the part of the insured." In Metropolitan Life Ins. Co. v. Fisher (1962) Okl., 382 P.2d 434, we recognize the distinction between two general types of total disability, occupational and non-occupational, and quoted with approval the following summary · of the law as presented by the Federal Court in Rushing v. Travelers' Ins. Co. of Hartford, 133 F.Supp. 707 (D.C. Eastern District of Oklahoma) which the defendant herein submits to be a fair expression of the Oklahoma rule:

"* * * the Oklahoma decisions do, by clear implication adopt the majority and modern rule which although recognizing that under the plain policy terms the insured must be unable to follow 'any occupation' (as distinguished from his original or usual one) before being entitled to payments, takes into account factors such as the insured's education, experience and ability to follow another vocation, together with the dignity, permanency and amount of income which can be earned from the substituted or alternative occupation. * * *"

The defendant under this proposition contends that the "plaintiff's education equips him to perform many vocations within his field and without," and cites the case of Automobile Owners Safety Ins. Co. v. Baker, (1958) Okl., 324 P.2d 867, as authority for reversal in this case. That case involved an injury sustained by a bricklayer's helper whose lack of experience and education prevented his ability to engage in other remunerative employment than of physical labor. The insurer admitted he couldn't pursue that.

Defendant seeks to persuade that plaintiff is precluded from being found "totally disabled" here because he is possessed of education and experience and, in contrast to the circumstance of the plaintiff in Automobile Owners Safety Ins. Co., v. Baker, supra, wherein loss of physical power had the effect of total disability to an uneducated brick-layer's helper. It is urged that as the position and status of the plaintiff in the case at bar is opposite to the status of the plaintiff there, the holding should be opposite here to that in the cited decision. We find no similarity or contrasting principles applicable to which the defendant suggests. The defendant's contention lacks merit because of a different factual situation. The defendant also mistakenly assumes that there was a complete lack of evidence as to any loss of physical and mental ability by plaintiff in assuming a different or associated vocation. We find that the disability to which the plaintiff complained in performing his duties in the field of medicine also affected his ability in pursuing another or similar vocation.

The defendant next contends under proposition II, as follows:

"The evidence does not support the finding that plaintiff is disabled to the extent that he cannot practice medicine."

The record here discloses that plaintiff has practiced medicine twenty-seven years, is fifty-five years old at trial time, is a resi-

dent of Madill, Marshall County, Oklahoma, where he owns a private hospital and where, until his accident, he conducted a general practice of medicine. After being released from the hospital to which he was confined in Oklahoma City, he closed his own hospital and, with the assistance of others—who had been associated with him in running it—he collected some outstanding accounts. His appearance is not different. One of his expert witnesses, a physician who attended him, thought he had recovered physically. He takes short walks and goes to town—to the bank, or a store—for short periods. He plays bridge and canasta card games and watches television. He reads the newspapers and his medical journals and part of the time understands what he reads, but other times does not. He cannot remember roads in the vicinity with which he formerly was quite familiar and is unable to remember where articles are kept in the house. He expects to find them in places where they were customarily kept ten or more years ago. His memory for things that occurred many years ago is excellent, but for occurrences during recent times his memory is blank. He doesn't recognize people with whom he was well acquainted in recent times prior to the accident. He lacks confidence in his ability to write a prescription. He formerly played golf, but is now generally withdrawn socially. He often cannot orient himself to his surroundings. He gets lost conversationally, at times being unable to conclude a conversation because of forgetting the purpose of a sentence, or the subject being discussed.

The jury heard opinion evidence from a medical expert which supported the finding of physical disability, as well as mental disability, of the plaintiff. During cross-examination of Dr. R., who had been qualified to express an opinion, he said that when he made a physical examination of plaintiff in July, 1962, the gait with which plaintiff walked had improved since an earlier examination of him, but that in his opinion plaintiff was physically disabled. In part, he testified as follows:

"Q.  Would you say that, laying aside his memory, as far as his physical condition, what was the extent of his physical ability?

"A.  It's hard to say what the extent of disability is on a man who has had a stroke. If you are talking about what can he do, physically he can't do anything."

The defendant directs our attention to Corsaut v. Equitable Life Assur. Soc., 203 Iowa 741, 211 N.W. 222, 51 A.L.R. 1035, for authority that when a physician is able to transact some business he is not totally disabled although he acts strangely and is forgetful and has periods of depression. This court, as heretofore set out, does not place a literal construction on the interpretation of "total disability" and has consistently followed the rule that appears in an annotation which follows the cited case at page 1048 of 51 A.L.R. wherein it is stated:

"Most of the courts * * * adhere to the rule that 'total disability' contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness; but the total disability contemplated means inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner."

See, also, Ozark Mut. Life Asso. v. Winchester, 116 Okl. 116, 243 P. 735, and Continental Casualty Co. v. Wynne, supra, wherein the above quoted rule was approved.

In the instant case there was adequate testimony that the plaintiff's skill, experience and education in the field of medicine was greatly impaired and that he could not perform substantially all the material acts of his profession.

■ In Metropolitan Life Ins. Co. v. Fisher, supra, we stated that the question of whether an insured is totally and permanently disabled within the meaning of the policy is ordinarily a question to be determined by a properly instructed jury.

■■ In carefully reviewing all of the testimony we find that while the plaintiff is not confined to his home and may have moments of complete physical and mental agility and comprehension there is proper and sufficient evidence for the jury to determine whether or not the plaintiff was "wholly and continuously disabled and prevented from engaging in each and every occupation or employment."

Affirmed.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.